THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VERNON JACKSON,

    Plaintiff,

vs.

DELAWARE COUNTY
SHERIFF'S DEPARTMENT and,

SHERIFF RAY DUDLEY

    Defendants.

Case No.

**FILED SEP 12 2017 U.S. CLERK'S OFFICE INDIANAPOLIS, INDIANA**

1:17-cv-3248 RLY -MJD

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

Plaintiff, Vernon Jackson, by counsel, for his Complaint for Damages and Request for Jury Trial against Defendants, Delaware County Sheriff's Department and Sheriff Ray Dudley, states as follows:

### I.    INTRODUCTION

This action is brought by Plaintiff, Vernon Jackson ("Jackson"), against Defendants, Delaware County Sheriff's Department ("DCSD"), Sheriff Ray Dudley ("Dudley"), for his claim of retaliation against DCSD and Dudley for having exercised his First Amendment right to political affiliation under the United States Constitution. Jackson also sues DCSD for violation of his rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendment Act ("ADAAA"). Sheriff Ray Dudley was at all times material to this claim acting under color of state law. Sheriff Ray Dudley is sued in both his official and individual capacities pursuant to 42 U.S.C. §1983.

## II. JURISDICTION AND VENUE

1. The Court has jurisdiction to try the case and has personal jurisdiction over the parties.

2. Jackson resides in Muncie, Indiana, Delaware County.

3. To the best of Jackson's knowledge and belief, during the relevant period Defendant, Dudley, resided in Muncie, Indiana, Delaware County.

4. All actions which form the basis of these claims originated in the Southern District of Indiana.

5. Jackson has exhausted his administrative remedies by timely filing an EEOC charge. Jackson received the EEOC's Right to Sue letter, dated July 14, 2017, on July 17, 2017.

6. Jackson files his ADAAA claim within ninety days of receiving the EEOC's Notice of Right to Sue.

## III. PARTIES

7. At all times relevant to this action, Jackson resided in Delaware County, Indiana and was employed by the Delaware County Sheriff's Department as a security bailiff.

8. DCSD is located in Muncie, Indiana.

9. At all times relevant to this action, Dudley resided in Delaware County, Indiana and was employed by the Delaware County Sheriff's Department as the Sheriff.

## IV. SUPPORTING STATEMENT OF FACTS

10. Jackson incorporates by reference paragraphs 1 through 9 above as if fully stated herein.

11. Jackson was employed by the Delaware County Sheriff's Department working as security at the front entrance of the county building, since 2006.

12. Jackson was not in a policy-making position.

13. In May of 2015, the previous Sheriff passed away.

14. On July 1, 2015, the new acting Sheriff, Ray Dudley, took office.

15. The current Sheriff, Ray Dudley, is a Democrat.

16. Vernon Jackson is a Republican.

17. Over the period of May 2015 to March 2016, in various conversations with Dudley, Jackson made it known to Dudley and others that he planned to run for Sheriff as a Republican in the next election.

18. Soon after Jackson announced his intention to run for Sheriff, DCSD officials commenced a program to terminate Jackson from his employment.

19. On January 6, 2016, Lt. Nancy Marvin issued Jackson a bogus write-up alleging violation of a directive from her that he provide a written request for a day off.

20. Jackson refused to sign the write-up because Lt. Marvin had not issued such a directive to him or other door bailiffs. Nor had Lt. Marvin's supposed directive been properly promulgated by Sheriff Dudley.

21. Jackson had followed past procedure by notifying Captain Earl Davis, also a door bailiff, that he had a doctor's appointment to treat his disability on January 6, 2016.

22. The next week, on January 13, 2016, one week after issuing Jackson the initial write-up, Lt. Marvin convened a meeting of the door bailiffs and formally notified them of a change in policy – that if they wanted a day off they were to submit written notice to her of their request for a day off.

23. However, Lt. Marvin did not extend this requirement to anyone other than the door bailiffs, such as Jackson.

24. In 2014, Jackson suffered a work-related injury to his left knee which resulted in a permanent disability.

25. In March 2016, Jackson's doctor scheduled Jackson to undergo surgery to treat his injured knee on April 6, 2016.

26. On or about March 16, 2016, Jackson's doctor prepared a calendar schedule of pre-op and surgery appointments which reflected the scheduled surgery date.

27. Jackson complied with Lt. Marvin's prior directive to provide her with a written notice of his absence upcoming absences by placing a copy of the pre-op and surgery calendar schedule in her mail box.

28. Sometime in March 2016, Jackson again told the incumbent Sheriff, Ray Dudley, that he planned on running for Sheriff in the next term.

29. On April 6, 2016, Jackson underwent surgery.

30. On April 7, 2016, Jackson was placed on short-term disability for recuperation from his surgery.

31. Human Resources knew about Jackson's short-term disability, because they processed his short-term disability payments.

32. Sometime in or around May 2016, Jackson asked Captain John Holding about a missing short-term disability payment.

33. During this conversation, Captain John Holding asked Jackson when he was expected to come back to work. Jackson told Captain Holding that he wasn't sure. Captain John Holding then instructed Jackson to keep him informed as to the date his doctor was going to release him to return to work.

34. On or about June 9, 2016, Jackson's doctor examined Jackson and concluded that Jackson had not healed sufficiently to return to work at the end of the normal recuperation period of about eight weeks.

35. Per Captain Holding's prior directive to him, on June 9, 2016, Jackson obtained a Doctor's note putting him off work until July 9, 2016.

36. That same day Jackson delivered the note to the Sheriff's office and placed the note in Captain John Holding's mailbox.

37. Five days later, on June 14, 2016, Officer Joe Krupa hand-delivered to Jackson at his home, a notice of intent to discipline him for two violations of Lt. Marvin's directives, signed by Lt. Nancy Marvin.

38. Attached to the Notice of Intent to Discipline were two write-ups, one alleging insubordination and failure to submit written notice of an absence directly to Lt. Marvin occurring on April 7, 2016; and another also alleging insubordination and failure to submit written notice of an absence directly to Lt. Marvin occurring on June 13, 2016.

39. The two separate write-ups were signed and issued by Lt. Marvin but were not dated by her.

40. To the best of Jackson's knowledge and belief, both write-ups were prepared by Lt. Marvin on the same date, June 13, 2016.

41. One write-up alleged that on April 7, 2016, Jackson violated a directive issued by Lt. Marvin in that on April 7, 2016, he failed to submit a written notice directly to Lt. Nancy Marvin that he was going to absent from work.

42. Marvin alleged that Jackson had committed a Group III offense, "refusing to comply with written or verbal instructions from a supervisor."

43. According to the Sheriff's Department Policy, a Group III offense is punishable by discipline ranging from a verbal reprimand to termination.

44. Even though Jackson's alleged insubordination occurred two months prior, Lt. Marvin did not issue the write-up to Jackson until June 14, 2016.

45. In that same write-up, Lt Marvin acknowledged that she had previously received notification of Jackson's appointments and surgery date of April 6, 2016. However, she wrote him up anyway.

46. In her write-up to Jackson, Lt. Marvin stated, "Concerning Mr. Jackson's surgury (sic), on February 19, 2016, he presented this officer with a report advising when his pre-op doctor's appointments would be as well as the day for his surgury (sic)."

47. On April 7, 2016, Lt. Marvin knew that Jackson had undergone major surgery on April 6, 2016, and that he was unable to return to work on April 7, 2016.

48. Lt. Marvin went on to admit in the same write-up of 4/7/16 that she learned through Captain John Holding, on or about May 18, 2016, that Jackson had informed Holding that his expected return to work date was June 13, 2016.

49. According to the short-term disability paperwork, dated March 16, 2016, three weeks before Jackson's scheduled surgery, and filed with Human Resources, HR knew that Jackson would be off work until at least June 13, 2016 as noted by Jackson's Doctor.

50. At no time during Jackson's post-surgery recuperation period, April 6 – June 13, 2016, did Lt. Marvin inquire of Jackson regarding his absence from work or when he expected to return to work.

51. The second write-up alleged a violation date of June 13, 2016, accusing Jackson of a second Group III offense, "Insubordination by refusing to comply with written or verbal

instructions from a supervisor." Lt. Marvin also alleged a Group I offense, alleging, "failure to provide notification to the authorized supervisor of an absence prior to the start of a shift."

52. The two alleged offenses arose out of one single act – not providing Lt. Marvin personally a written notice of Jackson's scheduled medical leave and expected return-to-work date.

53. Lt. Marvin prepared the second write-up on the same date as the first write-up alleging a violation occurring on April 7, 2016.

54. In other words, Lt. Marvin charged Jackson with two offenses arising out of a single act, a lesser Group I offense which would not include termination and a more serious Group III violation which authorized termination for the same conduct – failing to directly notify his direct supervisor of his absence and expected return-to-work date.

55. Lt. Marvin ordered Jackson to attend a discipline meeting on June 28, 2016, even though Jackson was still on medical leave.

56. On June 28, 2016, the "discipline" meeting was convened.

57. A subordinate to Sheriff Dudley, Lt. Ken Lopez, presided over the meeting.

58. The meeting was a sham designed to make it appear that Jackson had a fair hearing, when in fact the write-ups, on their face, showed that Lt. Marvin had been notified of Jackson's scheduled medical leave absence several weeks before his surgery.

59. During this meeting, Lt. Nancy Marvin handed Jackson the two write-ups which she had issued to him on June 14, 2016.

60. During this meeting, Captain John Holding admitted to receiving a copy of the doctor's excuse dated June 9, 2016, but denied telling Jackson he was to inform him, Holding, of his scheduled return to work date.

61. The April 2016 surgery was due to a work-related injury dating back to March 2014, when Jackson was at the gun range and knelt down to shoot and felt/heard a pop, and then in April 2014 while climbing stairs Jackson's knee began to swell.

62. The DCSD failed to give Jackson contemporaneous notice of a proposed discipline for the first offense occurring on April 7, 2016; rather, DCSD and Lt Marvin waited more than two months after the alleged misconduct to issue a write-up, thereby eliminating any chance for Jackson to be more careful in the future about personally notifying Lt. Marvin with respect to his time off.

63. DCSD failed to follow its own progressive discipline policy by not verbally reprimanding Jackson and giving him the chance to correct his behavior.

64. DCSD and Sheriff Ray Dudley chose to terminate Jackson and contriving three three different charges arising out of a single act in order to paper his file and justify terminating Jackson.

65. The Group I offense is the same violation as the Group III offense and should have been used first to "help you (Jackson) improve your conduct," per DCSD's own paperwork given to Jackson at his disciplinary hearing where it was decided to terminate his employment.

## V. SECTION 1983-FIRST AMENDMENT RETALLIATION

66. Jackson incorporates by reference paragraphs 1 through 65 above as if fully stated herein.

67. Jackson's statement of his intent to run for Sheriff was protected political affiliation under the First Amendment of the U.S. Constitution.

68. Sheriff Ray Dudley knew or should have known that Jackson's statement of his intent to run for Sheriff in the next election was protected political under the First Amendment of the U.S. Constitution.

69. Because Jackson's political affiliation is protected under the First Amendment, the DCSD and Sheriff Ray Dudley were, as a matter of law, prohibited from penalizing or retaliating against Jackson because of his political affiliation.

70. At all relevant times, Jackson was not a policy maker or a policy decision authority within the Sheriff's Department.

71. Acting under color of state law, the DCSD and Sheriff Ray Dudley violated Jackson's right to free speech under the First Amendment of the United States Constitution by contriving a phony reason, Group III offenses, to terminate Jackson

72. The unlawful retaliation, civil rights deprivation and violation committed by the DCSD and Sheriff Ray Dudley against Jackson while acting under color of state law, was taken with reckless, callous and conscious disregard for Jackson's rights, warranting the imposition of punitive damages against Sheriff Ray Dudley in his individual capacity.

73. But for the unlawful retaliation, civil rights deprivation and violation committed by the DCSD and Sheriff Ray Dudley, Jackson's employment with the Delaware County Sheriff's Department would have continued, uninterrupted, to date.

74. As a result of this unlawful retaliation, civil rights deprivation and violation committed by the DCSD and Sheriff Ray Dudley, Jackson suffered damages of a pecuniary and non-pecuniary nature.

## VI.  ADAAA DISCRIMINATION and RETALIATION

75. Jackson incorporates, by reference, paragraphs 1 through 65 as if fully stated herein.

76. At all relevant times Jackson was meeting the legitimate performance expectations when not on leave for treatment of his disability.

77. During all relevant time periods, Jackson suffered from a disability resulting from medical impairment, left knee, which limited the major life-activities of walking, running, and kneeling.

78. During the relevant time periods, upon application for a reasonable accommodation in the form of time off to treat his disability, DCSD granted Jackson time off to treat his disability.

79. In or around February 2016, Jackson notified Defendants of his need for time off for treatment of his knee injury and subsequent total knee replacement surgery.

80. Defendants tacitly approved his request for time off to treat his disability in that they took no action to disapprove his request.

81. Jackson underwent knee replacement surgery on April 6, 2016.

82. Sometime after his surgery, in or around May 2016, Jackson spoke with Captain Holding and inquired about a missing short-term disability payment.

83. In the course of that conversation, Captain Holding asked Jackson when he would be returning to work.  Jackson replied that he didn't know because he wasn't sure when the doctor would release him.

84. Captain Holding asked Jackson to let him know as soon as he, Jackson, knew the date the doctor would release him to return to work.

85. Captain Holding is a superior officer to Lt. Nancy Marvin.

86. While on medical leave, on June 9, 2016, Jackson's Doctor extended his recuperation time from June 13 to July 9, 2016.

87. In accordance with Captain Holding's previous directive to Jackson to let him know when the doctor was going to release him to return to work, on June 9, 2016, Jackson left a copy of the doctor's note in Captain Holding's mail box at the Sheriff's Department.

88. Five days later, on June 14, 2016, Joe Krupa delivered a letter of notice of intent to discipline Jackson to Jackson at his home. Included with the letter of notice of intent to discipline him, were two write-ups, dated April 7, 2016 and June 13, 2016, respectively.

89. The write-ups wrongfully accused Jackson of Group III offenses, insubordination, and a Group I offense of failure to provide Lt. Marvin written requests for time off and failure to provide a written notice of his expected return to work date.

90. Sheriff Dudley had the discretion to administer a lower level of discipline but chose to terminate Jackson despite the fact that Lt. Marvin had received written notice of Jackson's absence and his expected return-to-work date from other sources.

91. Sheriff Dudley and Lt. Marvin contrived a phony reason to terminate Jackson because of his absences related to treatment for his disability in violation of Jackson's rights under the ADAAA.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff, by counsel, respectfully requests the Court order Defendants:

    a. Pay to Plaintiff back pay, front pay, and compensatory damages permitted under the ADAAA;

    b. pre-judgment interest on all non-punitive damages;

    c. damages related to Defendants' retaliation against Plaintiff for exercising his First Amendment rights of political affiliation;

    d. the costs of this action including reasonable attorney's fees with interest;

    e. grant such relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR JURY TRIAL

Plaintiff, by counsel, requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Tae Sture*

Tae Sture, Attorney No. 25120-29
Attorney for Plaintiff
Sture Legal Services, LLC
155 East Market Street, Suite 501
Indianapolis, IN  46204
Ph:   (317) 577-9090
Fax:  (317) 577-1102
Email: tae@sturelaw.com