UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VERNON JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:17-cv-03248-JPH-MJD |
| DELAWARE COUNTY SHERIFF'S DEPARTMENT, RAY DUDLEY Sheriff, | ) |
| Defendants. | ) |

**ORDER ON SUMMARY JUDGMENT**

Vernon Jackson claims his employment with the Delaware County Sheriff's Department was terminated because of his disability and political affiliation. But he has not identified evidence from which a reasonable jury could find that either his disability or protected speech was a reason for his termination. Accordingly, the Court **GRANTS** summary judgment in favor of Defendants, dkt. [54], and **DENIES** Mr. Jackson's cross-motion for summary judgment, dkt. [64].

**I.
Facts and Background**

Because Defendants have moved for summary judgment, the Court views and recites the evidence in the light most favorable to Mr. Jackson and draws all reasonable inferences in his favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Since Mr. Jackson has also moved for summary judgment, the Court would normally interpret the evidence in a light most favorable to Defendants when considering his motion. *See Family Mut. Ins. v. Williams*, 832

1

F.3d 645, 648 (7th Cir. 2016). That's not necessary here, however, because even when all evidence is interpreted in Mr. Jackson's favor, Defendants are entitled to summary judgment.

**A.     Mr. Jackson's employment with the Delaware County Sheriff's Department**

Mr. Jackson worked as a security bailiff for the Delaware County Sheriff's Department ("the DCSD") from 2006 until 2016. Dkt. 55-1 (Jackson Dep.) at 12:25-13:3, 19:5-7. As a security bailiff, Mr. Jackson was responsible for maintaining security in county buildings and courthouses. *Id.* at 19:11-17.

DCSD employees were required to give their supervisor advance notice of time-off requests by placing a memo in their supervisor's mailbox. Dkt. 55-1 at 42:6-20, 58:7-59:9, 59:22-60:4, 62:2-6, 64:12-21; dkt. 55-5 at 9. Lieutenant Nancy Marvin was Mr. Jackson's supervisor. Dkt. 64-1 ¶ 24. Mr. Jackson was required to notify Lt. Marvin when he would be absent from work because she was responsible for finding his replacement. Dkt. 55-2 (Marvin Dep.) at 62:16-63:2, 133:13-134:20.

In June 2015, Ray Dudley—a Democrat—was appointed sheriff. Dkt. 55-7 (Dudley Dep.) at 8:17-21, 77:16-18. A few times over the next couple of years, Mr. Jackson told Sheriff Dudley that he was considering running for sheriff as a Republican. Dkt. 55-1 at 132:23-134:14; dkt. 64-1 ¶ 6. During one conversation, Sheriff Dudley responded by saying "good." Dkt. 55-1 at 134:4-14. When Mr. Jackson tried to run for sheriff in 2016, however, he did not get the Republican nomination. Dkt. 55-7 at 78:16-21.

### B. Mr. Jackson takes time off after injuring his knee

In March 2014, Mr. Jackson was kneeling at a firing range and suffered a serious knee injury. Dkt. 64-1 (Jackson Decl.) ¶ 12; dkt. 64-5. He experienced chronic knee pain throughout 2014 and 2015, requiring him to use crutches or a cane to walk or stand. Dkt. 64-1 ¶¶ 16-23. Because of this injury, he missed several months of work. *Id.* ¶¶ 17-18, 20. By the middle of November 2015, Mr. Jackson had recovered from his knee injury sufficiently to return to work full-time. *Id.* ¶ 26.

Shortly after Mr. Jackson returned to work full-time, Lt. Marvin issued a memo to all bailiffs reminding them that they needed to request time off in writing and asking them to submit all time-off requests for the year to her by January 31, 2016. Dkt. 64-4 at 14.

Mr. Jackson continued to experience pain in his knee, so he scheduled a doctor's appointment for January 6, 2016. Dkt. 64-1 ¶¶ 23, 29. Lt. Marvin reminded Mr. Jackson that he needed to request the time off in a written memo given to her. *Id.* ¶ 36. Mr. Jackson did not put a memo in Lt. Marvin's mailbox before attending his doctor's appointment. *Id.* ¶ 40; dkt. 55-1 at 58:1-25.

### C. Mr. Jackson is warned about his failure to provide written notice of the requested time off

Lt. Marvin chided Mr. Jackson for his failure to provide her with a written memo as she requested. Dkt. 64-1 ¶¶ 42, 44. She told him that for all future appointments, he was required to submit a written memo and ensure that she received it. *Id.* ¶ 50. She also filed a "Record of Oral Warning" stating that she warned Mr. Jackson he needed to submit a written memo for any

3

future days off and that he had "failed to make written notice that he would not be working on 1/6/16." Dkt. 55-3 at 1.

**D.     Mr. Jackson takes short-term disability leave**

On April 6, Mr. Jackson had knee-replacement surgery, which required him to go on short-term disability leave for several months. Dkt. 64-8; dkt. 64-1 ¶ 57. Mr. Jackson's doctor told the DCSD Human Resources department that Mr. Jackson would return to work on June 13, 2016. Dkt. 64-1 ¶¶ 56, 66, 68. While on leave, Mr. Jackson called a different supervisor, Captain Holding, and told him that his leave was extended to July 18. *Id.* ¶¶ 62-66. Mr. Jackson eventually provided him with a doctor's note about the dates of his medical leave. *Id.* ¶¶ 67-69.

**E.     Mr. Jackson is reprimanded for failing to follow the protocol for time-off requests**

On June 14—the day after he was originally supposed to return to work—Mr. Jackson received two written reprimands from Lt. Marvin. The first one, which had a violation date of April 7, said that Mr. Jackson had not provided the required documents to request an extended leave for his surgery and that he failed to tell Lt. Marvin when he was planning on returning to work. Dkt. 55-3 at 2. The second reprimand, which had a violation date of June 13, said that he failed to show up for his shift that day and did not give Lt. Marvin notice that his leave was extended. *Id.* at 3. Both reprimands mentioned that Lt. Marvin met with Mr. Jackson in January and told him that he was required to report all time off to her in advance. *Id.* at 2-3.

### F. Mr. Jackson is terminated for insubordination

Based on these reprimands, a pre-disciplinary hearing was scheduled to address Mr. Jackson's conduct. Dkt. 64-1 ¶ 87; dkt. 55-6 at 1-2. A neutral administrator conducted the hearing and concluded that Mr. Jackson never properly notified Lt. Marvin of his short-term disability leave or his return date. Dkt. 55-6. Both Lt. Marvin and the neutral administrator submitted reports to Sheriff Dudley summarizing Mr. Jackson's conduct. *Id.*; dkt. 55-7 at 21:15-22:1. Based on those reports, Sheriff Dudley terminated Mr. Jackson, citing insubordination for failing to submit written memos requesting time off as required by Lt. Marvin. Dkt. 55-7 at 21:15-20.

### G. Procedural history

On September 12, 2017, Mr. Jackson brought this suit alleging that Defendants terminated him because of his political affiliation—namely, his statement that he intended to run for sheriff as a Republican. Dkt. 1 ¶¶ 66-74 ("Count I"). Mr. Jackson also alleges that that Defendants terminated him because of his disability in violation of the Americans with Disabilities Act Amendment Act ("ADA"). *Id.* ¶¶ 75-91 ("Count II").

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court of the basis for its motion and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

## III.
## Analysis

**A.   Mr. Jackson's First Amendment Retaliation Claim (Count I)**

Mr. Jackson claims he was terminated because of his political affiliation. Dkt. 1 ¶¶ 66-74; dkt. 64 at 31; dkt. 75 at 9. Specifically, that after he declared his intention to run as a Republican candidate for sheriff, Defendants fired him "to eliminate him as a political opponent." Dkt. 64 at 1. To succeed with his First Amendment retaliation claim, Mr. Jackson must show that "(1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). Only if he establishes these things does the burden shift to Defendants to provide reasons for why they would have fired Mr. Jackson even in absence of his protected speech. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). If they meet this burden, the burden shifts back to Mr. Jackson to demonstrate that those reasons were pretextual. *Id.*

Defendants argue Mr. Jackson has not presented any evidence that his First Amendment activity was a motivating factor in his termination. Dkt. 55 at 18-20. The motivating-factor element is a causation inquiry. *Massey*, 457 F.3d at 716-17. Mr. Jackson must establish the existence of a genuine issue of

6

a material fact regarding the "causal link" between the protected act and the termination. *Lavite*, 932 F.3d at 1031. In First Amendment political-affiliation cases, this requires evidence of a causal connection between an employee's political affiliation and the adverse action. *See Daza v. Indiana*, 941 F.3d 303, 305-08 (7th Cir. 2019) (holding that a plaintiff failed to establish that his political affiliation was a motivating factor behind his termination when he failed to designate evidence causally connecting his termination with his politics).

Here, Mr. Jackson has not identified evidence showing that his political affiliation was a motivating factor in his termination. Although the designated evidence demonstrates that Mr. Jackson made political statements and that he was later terminated, this alone does not establish a causal link. He has not designated evidence, for example, that any supervisor referenced his Republican political ambitions when disciplining him. Nor has he designated evidence showing that the reasons provided for his termination were somehow connected to his political speech. Without this evidence, he has failed to demonstrate that his political affiliation was a motivating factor in his termination. *Id.*

This lack of causal evidence distinguishes this case from the case Mr. Jackson relies on, *Yahnke v. Kane County, Illinois*, 823 F.3d 1066 (7th Cir. 2016). There, the defendant said "I'm not giving [the plaintiff] any time off, I'm firing him. He thinks he's going to run for Sheriff against me some day." *Id.* at 1071. This statement clearly connected the plaintiff's termination to his

political ambitions, so the retaliation claim survived summary judgment. Here, Mr. Jackson has not designated any evidence like this to establish the necessary causal link.

Mr. Jackson argues it can be inferred that his political affiliation was causally linked to his termination because Sheriff Dudley knew Mr. Jackson intended to run against him and thus had a "motive to eliminate a political rival." Dkt. 75 at 10. But Mr. Jackson has not designated evidence that supports this theory. On the contrary, Mr. Jackson testified that Sheriff Dudley was supportive of his political ambitions. Dkt. 55-1 at 134:4-19.

But even if the evidence supported the inference that Sheriff Dudley had a motive to terminate Mr. Jackson, that alone is not enough to establish causation. *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998) ("proof of an improper motive is not sufficient to establish a constitutional violation—there must also be evidence of causation"). For example, in *Zerante*, 555 F.3d at 585, the plaintiff, a public employee who worked for the mayor, remained politically neutral during a mayoral race. After the defendant won the election and became mayor, he fired the plaintiff and replaced her with his campaign treasurer. *Id.* at 584. Despite an obvious possible political motive behind the plaintiff's termination, the court held that the termination did not amount to First Amendment retaliation because the employee "failed to adduce any evidence that her political activities . . . [were] a substantial or motivating factor in her firing." *Id.* at 586. As *Zerante* demonstrates, a plaintiff must designate evidence beyond a motive to establish a causal link between political

8

activity and a termination. Mr. Jackson has not designated any such causal evidence here.

Mr. Jackson also attempts to establish a causal link through suspicious timing. Suspicious timing can support an inference of causation, such as when the adverse employment action "took place on the heels of protected activity." *Mullin v. Gettinger*, 450 F.3d 280, 285 (7th Cir. 2006) (quotation omitted); *see e.g.*, *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (adverse action occurred four days after protected activity). But the fact that an adverse action occurred sometime after protected activity does not establish causation. *Id.* (citing cases). For example, in *Mullin* more than a year passed between the protected activity and adverse action, so the court held it could not infer causation based on suspicious timing. *Id.*; *see also Lavite*, 932 F.3d at 1031.

Here, Mr. Jackson did not remember when he spoke to Sheriff Dudley about his plans to run for sheriff as a Republican. Dkt. 55-1 at 132:23-133:12. The only inference to be drawn from these facts, therefore, is that the protected activity occurred sometime before Mr. Jackson's termination. But alleging that a protected act preceded an adverse action—by perhaps as much as a year—does not amount to suspicious timing and thus does not establish a causal link. *Mullin*, 450 F.3d at 285.

Finally, Mr. Jackson argues that Defendants' proffered reason for his termination was pretext. He claims he provided adequate written warning of his absences and even if he did not, Defendants disciplined him more severely

9

than his conduct warranted—imposing a "death sentence for a misdemeanor." Dkt. 64 at 8, 35.

Pretext can serve as circumstantial evidence of a causal link. *See e.g.*, *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). But pretext alone cannot establish a causal link because pretext only establishes that the employer's proffered explanation "was not the real reason" for the termination; a plaintiff would "still need to offer some reason to infer that retaliation was the reason." *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017). Here, even if Defendants' reason for terminating Mr. Jackson was pretext, there is no designated evidence to support the inference that his protected activity was the real cause of his termination. *Id.*

Mr. Jackson has not designated evidence showing that his political affiliation was a motivating factor in Defendants' decision to terminate his employment. *Daza*, 941 F.3d at 309. Therefore, his claim fails. The Court **GRANTS** summary judgment in Defendants' favor on Mr. Jackson's First Amendment retaliation claim (Count I).

## B. Mr. Jackson's Disability-Discrimination Claim (Count II)

Mr. Jackson also alleges that Defendants fired him because of his disability. The ADA prohibits an employer from discriminating against an employee on the basis of a disability. 42 U.S.C. § 12112(a). To establish disability discrimination, Mr. Jackson must show that: "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or

without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016).

To survive summary judgment, Mr. Jackson must show a genuine issue of material fact exists regarding whether his disability was the "but for" reason for his termination. *Monroe v. Ind. DOT*, 871 F.3d 495, 504 (7th Cir. 2017). In doing so, he can rely on direct and circumstantial evidence or use the burden–shifting method established in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

Mr. Jackson attempts to prove discrimination using the *McDonnell-Douglas* framework, dkt. 55 at 12; dkt. 64 at 27, so he first must establish a prima facie case by showing "(1) that he is disabled under the ADA; (2) that he was meeting his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably," *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014).

Defendants argue Mr. Jackson cannot show that similarly situated employees without disabilities were treated more favorably.[1] Mr. Jackson contends he has met his burden "through his submission of Exhibit J." Dkt. 75 at 10. Relying on Exhibit J, he explains that with respect to other employees who were supervised by Lt. Marvin, "of the 189 days taken off, only

---

[1] Defendants also argue that Mr. Jackson was not disabled. Dkt. 55 at 10-13. Because the question of causation is dispositive, the Court does not decide whether Mr. Jackson was disabled under the ADA. Mr. Jackson's motion for summary judgment on this point is **DENIED as moot**. Dkt. [64] at 4.

106 of the days off were supported by memos." Dkt. 64 at 4; dkt. 64-10. According to Mr. Jackson, these records demonstrate that "other employees failed to submit written requests for 'days off' but were not disciplined for insubordination." Dkt. 64 at 12.

But there is more to the comparator analysis than showing that other employees of the DCSD were not disciplined for absences that were not supported by written memos. There are different requirements for different types of absences. Employees who suddenly became ill, for example, were not required to submit a time-off request in writing but only had to notify their supervisor two hours in advance. Dkt. 55-7 at 42:20-43:6; dkt. 55-5 at 9. The attendance records do not distinguish employees who took sick days due to a sudden illness (no memo required) from employees who took sick days that were known of in advance (memo required). *See e.g.*, dkt. 64-10 at 22-23 (faulting employee for failing to provide a memo for "sick time"). So these records do not demonstrate that other employees were treated more severely than Mr. Jackson for the same conduct.

In addition, under the *McDonnell Douglas* framework, Mr. Jackson must demonstrate that "similarly situated employees *without a disability* were treated more favorably." *Bunn*, 753 F.3d at 685 (emphasis added). But the attendance records do not distinguish employees who were disabled under the ADA from employees who were not disabled under the ADA. Without this information, these records do not show that similarly situated employees without a disability were treated more favorably.

12

Mr. Jackson also argues that Defendants' explanation for his termination was pretext. Dkt. 64 at 31. But Mr. Jackson has not established a prima facie case, so the Court does not analyze Defendants' explanation for the termination. *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 536 (7th Cir. 2017) ("We need not concern ourselves in this case with burden-shifting or pretext because plaintiffs have not established a prima facie case."). Therefore, the Court **GRANTS** Defendants' motion for summary judgment on Mr. Jackson's disability discrimination claim (Count II).

Throughout his filings, Mr. Jackson criticizes how Defendants handled his discipline and eventual termination. But it is not the Court's role to assess the wisdom or fairness of the DCSD's personnel decisions. *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005) (stating that the court does not "sit as a super-personnel department"). It is Mr. Jackson's burden to designate evidence from which a jury could find that a disability or political affiliation was a reason that he was fired. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) ("the ADA requires proof of causation"); *Lavite*, 932 F.3d at 1031 (stating that First Amendment retaliation claims require that the "protected speech was at least a motivating factor for the deprivation"). He has not done so here, so no reasonable jury could conclude from the designated evidence that Mr. Jackson has presented a prima facie case of discrimination.

# IV.
# Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [54]. Mr. Jackson's cross-motion for summary judgment is **DENIED**. Dkt. [64]. Defendants' motion to strike Mr. Jackson's Cross-Motion for Summary Judgment is **DENIED as moot**. Dkt. [65]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 2/5/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Aimee Rivera Cole
TRAVELERS STAFF COUNSEL OFFICE (Indianapolis)
arcole@travelers.com

Julie Joy Havenith
TRAVELERS STAFF COUNSEL OFFICE
jhavenit@travelers.com

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com